IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Christine Robertson | ) |
| Plaintiff, | ) ) ) ) |
| vs. | ) Case Number. 1:09-cv-00850 ) |
| Experian Services Corporation, Trans Union, LLC and National Recovery Agency, Inc. | ) ) ) ) ) |
| Defendants | ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S, TRANS UNION, LLC MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff, Christine Robertson, ("Plaintiff"), by and through her counsel, Warren & Vullings, LLP, hereby replies in opposition to the Motion for Summary Judgment filed by Defendant, Trans Union LLC ("Trans Union"), and in support thereof avers as follows:

**I.  INTRODUCTION**

Plaintiff brought this action against Defendant's, Trans Union LLC, Experian Services Corporation ("Experian"), and National Recovery Agency, Inc. ("NRA"), for violations of the Fair Credit Reporting Act (hereinafter "FCRA"), 15 U.S.C. §1681 *et sec., as amended,* the Fair Debt Collections Practices Act (hereinafter "FDCPA"), 15 U.S.C. §1692 *et sec.* and various other state laws.

Plaintiff was sent a collection notice in January 2006 from NCO Financial Systems, Inc. ("NCO") regarding an alleged debt originally owed to BMG Music Club. After speaking with an Agent of NCO inquiring about the notice, Plaintiff ascertained that the alleged account was opened by her son.  In March 2006, Plaintiff used her

checking account online to pay off the alleged debt. Plaintiff continued to maintain several credit cards in good standing with timely payments during this time.

Several years later, in March 2009, Plaintiff was notified of negative information being reported by Defendant, NRA on her credit report. Plaintiff promptly requested copies of her reports from each of the three major credit reporting bureaus and contacted Defendant, NRA to obtain additional details about the account, which appeared to be the same account Plaintiff had paid nearly three years prior. Plaintiff had several subsequent telephone conversations with agents of Defendant, NRA disputing the validity of the account and requesting validation of the alleged debt which was never sent.

Plaintiff formally disputed the account Defendants, Experian and Trans Union and sent Defendant, NRA a letter of dispute in April 2009. Plaintiff received notification from Defendant, Experian after her initial dispute that the item was verified and would remain on her report. The disputed item was removed by Defendant, Trans Union only after a second dispute was sent in May 2009.

Due to the inaccurate information on her report, Plaintiff's credit card limits were reduced, she incurred penalties for withdrawing funds from her IRA account, her homeowner's insurance rate has increased, and her credit score has dropped nearly 100 points leading to further denials of credit.

## II. ARGUMENT

### a. Standard for Summary Judgment

Summary judgment is only proper pursuant to Rule of the Federal Rules of Civil Procedure 56(c) if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant

is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A factual dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A factual dispute is "material" when it "might affect the outcome of the suit under the governing law." *Id.* In order to survive summary judgment, a plaintiff must make a showing "sufficient to establish the existence of element[s] essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 323. The moving party has the initial burden of proof and, only once a prima facie case is made, the non-moving party must respond with evidence to contradict and show the existence of a genuine issue of material fact. *Whitesides v. Equifax*, 125 F. Supp. 2d 813, 816 (U.S.D.C. W.D. La. 2000). In considering a motion for summary judgment, the "facts must be viewed in the light most favorable to the party opposing summary judgment." *Int'l Raw Materials, Ltd. v. Stauffer Chem. Co.*, 898 F.2d 946, 949 (3d Cir. 1990). The party opposing the motion, however, cannot "rely merely upon bare assertions, conclusory allegations, or suspicions" to support its claim. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

  b.  **Plaintiff's FCRA Claim Does Not Fail as a Matter of Law.**

Congress, recognizing abuses in the burgeoning credit reporting industry, originally "enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). The FCRA imposes obligations on Credit Reporting Agencies (hereinafter "CRA") and users of consumer information and provides for

enforcement by various federal agencies. *See*, e.g., 15 U.S.C. § 1681s. The act also expressly creates a private cause of action, enabling consumer suits for willful or negligent noncompliance with its requirements. *Id*. § 1681n-o. Plaintiffs may recover actual damages for negligent violations, 15 U.S.C. § 1681o(a)(1), and actual or statutory and punitive damages for willful ones, *id*. § 1681n(a)(1)-(2); *Safeco*, 551 U.S. at 53.

Plaintiff has introduced evidence that 1) here consumer report was inaccurate for a period of time because Trans Union willfully failed to delete the NRA tradeline; since 2) they failed to take any action whatsoever after Plaintiff's dispute in April 2009; further, 3) Trans Union's failure to reinvestigate was the cause in fact of the inaccurate consumer report and 4) Plaintiff's credit worthiness was harmed as well as her reputation with her current and prospective creditors.

To establish liability under 15 USCS § 1681e(b), consumer need not introduce direct evidence of unreasonableness of procedures, but in certain instances inaccurate credit reports by themselves can fairly be read as evidencing unreasonable procedures. *Parker v. Parker*, 124 F Supp 2d 1216 (2000, MD Ala)(criticized in *Ruffin-Thompkins v. Experian Info. Sys.*, 2003 US Dist LEXIS 23647 (2003, ND Ill)).

In this matter it is undisputed that Plaintiff's credit report compiled by Trans Union contained inaccuracies. The Defendant's reliance upon *Henson v. CSC Credit Servsl*, 29 F.3d 280, is misplaced. *Henson* refers to public record information and is simply a case used routinely by this Defendant in all its standard Motions for Summary Judgment. Here, Defendant relied on information supplied by NRA, not by any public record.

Trans Union has been sued in this in a case with NRA in the past. Trans Union had every reason to suspect that information being reported by NRA would be inaccurate. In the matter of *Anthony B. Shakoor v. Trans Union et.al.*, docket number 2:05-cv-06606, Plaintiff Shakoor complained that Trans Union received inaccurate information from NRA and after the matter was disputed continued to report the inaccurate information on Shakoor's report. Trans Union was represented by the same firm it is represented by in this matter. See copy of Complaint attached hereto as "**Exhibit A**". Trans Union had actual notice that NRA had previously reported inaccurate information. Obviously, William R. Stockdale's Declaration is factually inaccurate.

   c. **Trans Union Deleted the NRA Item After Plaintiff's Second Dispute.**

The FCRA establishes a legal duty that requires CRAs to allow consumers to correct an inaccuracies on their credit files, stating that "if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly of such dispute," the CRA must conduct a reinvestigation into each disputed entry. 15 U.S.C. § 1681i. The CRAs must implement and "follow reasonable procedures to assure maximum possible accuracy" of consumer credit information. *See* 15 U.S.C. § 1681e(b).

Plaintiff testified at her deposition that she disputed the NRA information with Trans Union twice. P20:L3-15. Exhibit B to the Complaint indicates that Plaintiff took action regarding the disputed item in April 2009. Plaintiff received correspondence from her current creditor dated April 20, 2009 that Trans Union was reporting negative information. See copy of letter attached hereto as "**Exhibit B**." The Declaration of Steven Newnom touts that Trans Union compiles "billions of items of information".

Steven Newnom declares that Trans Union can be contacted by phone to receive consumer disputes. However, Trans Union now claims that the only dispute was in May 2009 since Plaintiff does not have a written document evidencing the first dispute. The issue of notice is a genuine issue of material fact and as such Defendant's Motion for Summary Judgment must fail.

Under 15 U.S.C. § 1681i, the procedure in cases of disputed accuracy reads in part:

> "(a) Reinvestigations of disputed information.
>    (1) Reinvestigation required.
>       (A) In general. Subject to subsection (f), if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."

Here, Trans Union proudly announces that they do not do a reinvestigation they simply remove the item. That is contrary to the requirements of the FCRA. Further, there is no statutory mandate that a consumer must notify Trans Union in writing about a dispute. As such Trans Union's admits that it does no reinvestigation and as such violates the FCRA.

Trans Union's argument of lack of notice prior to May of 2009 is equally without merit not only because Plaintiff disputes lack of notice but also because Trans Union had actual notice of NRA reporting inaccurate information in the best. The Honorable Anita B. Brody disposed if a similar issue raised by Equifax:

> "Equifax also argues that, because Equifax followed reasonable procedures by reporting information from reasonably reliable sources, the O'Briens' " § 1681e(b) claim fails due to lack of evidence of notice to Equifax before the alleged damages were incurred." (Def.'s Reply at 13.) Equifax 's argument fails because the factual predicate to its argument, that HSBC was one of Equifax 's reasonably reliable sources, is disputed."

*O'Brien v. Equifax Info. Servs., LLC*, 382 F. Supp. 2d 733, 739 (E.D. Pa. 2005).

Trans Union's argument must fail for the same reason.

### d. Plaintiff Has Evidenced Damage Caused by Trans Union's Reporting of the NRA Item.

Trans Union argues that the existence of a $280.00 collection account on Plaintiff's credit report was the cause of any harm to Plaintiff and that the NRA item, even if inaccurate, did not harm the Plaintiff nor did it give rise to actual damages. Attached to this response as "**Exhibit B**" is a notice of a reduction of a credit limit based solely on information being reported by Trans Union. Miraculously this letter was sent weeks after Trans Union reported the NRA item. The other collection activity was three years prior to the suit being filed. *See* Plaintiff's Dep Pgs. 108-109.

Title 15 U.S.C. § 1681e(b) provides: Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." A case of negligent noncompliance with § 1681e(b) consists of four elements: (1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy

was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry. *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996).

Courts have recognized that where a decision-making process implicates a wide range of considerations, all of which factor into the ultimate decision, it is inappropriate to saddle a plaintiff with the burden of proving that one of those factors was the cause of the decision. *See*, e.g., *Price Waterhouse v. Hopkins*, 490 U.S. 228, 241, 244, 109 S. Ct. 1775, 1785, 1787, 104 L. Ed. 2d 268 (1989) (plurality opinion) (finding that "Title VII [of the Civil Rights Act of 1964] meant to condemn even those decisions based on a mixture of legitimate and illegitimate considerations," and concluding that Title VII plaintiff must show illegitimate consideration "played a motivating part in an employment decision"); *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265-66, 97 S. Ct. 555, 563, 50 L. Ed. 2d 450 (1977) (plaintiff claiming equal protection violation need not "prove that the challenged action rested solely on racially discriminatory purposes" but only that such a purpose was "a motivating factor in the decision"). Indeed, where multiple factors exist, any inquiry into the cause of a decision would be a meaningless endeavor. *See Price Waterhouse*, 490 U.S. at 247, 109 S. Ct. at 1788-89 (plurality opinion).

The Court in *Philbin supra* expanded the *Price* decision by stating "We hasten to add that the burden of proving causation remains with the plaintiff at all times and never shifts to the defendant. We conclude however that even on this sparse record, a reasonable trier of fact could infer that the inaccurate entries were a substantial factor in

bringing about Philbin's injuries. Accordingly, Philbin has produced evidence sufficient to satisfy his burden of proving a prima facie case of negligent noncompliance with 15 U.S.C. § 1681e(b) as to each defendant." Plaintiff is in the same situation as was Philbin.

Similarly in *Cahlin*, 936 F.2d at 1156, 1161, the Eleventh Circuit upheld a grant of summary judgment to the defendant only after all of the credit grantor's records had been subpoenaed and there was no indication that an adverse credit report prepared by the defendant had ever been used in making the credit decision, much less any indication that such a report had been a causal factor in the decision. The only investigation done as to the $280.00 collections account was limited to three questions asked at Plaintiff's deposition.

It can not be disputed that Trans Union's report was the cause of Plaintiff's credit limit. The only genuine issue that remains is regarding which part of the report. Plaintiff submits that is an issue of fact.

e. **Trans Union's Procedures in Listing the NRA Item Were "Objectively Unreasonable" and a Willful Violation of the FCRA**

It was objectively unreasonable for Trans Union to post the NRA item since it had previously been made aware of NRA's posting of inaccurate information as more fully described above. Courts have held that "willfully" is a "word of many meanings whose construction is often dependent on the context in which it appears," *Bryan* v. *United States*, 524 U.S. 184, 191, 118 S. Ct. 1939, 141 L. Ed. 2d 197 (1998) (internal quotation marks omitted); and where willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well, see *McLaughlin* v. *Richland Shoe Co.*, 486 U.S. 128, 132-133, 108 S. Ct. 1677, 100 L. Ed. 2d 115 (1988) ("willful," as used in a limitation provision for actions under the

Fair Labor Standards Act, covers claims of reckless violation); *Trans World Airlines, Inc.* v. *Thurston*, 469 U.S. 111, 125-126, 105 S. Ct. 613, 83 L. Ed. 2d 523 (1985) (same, as to a liquidated damages provision of the Age Discrimination in Employment Act of 1967); cf. *United States* v. *Illinois Central R. Co.*, 303 U.S. 239, 242-243, 58 S. Ct. 533, 82 L. Ed. 773 (1938) ("willfully," as used in a civil penalty provision, includes "'conduct marked by careless disregard whether or not one has the right so to act'" (quoting *United States* v. *Murdock*, 290 U.S. 389, 395, 54 S. Ct. 223, 78 L. Ed. 381, 1934-1 C.B. 144, 1934-1 C.B. 145 (1933))). This construction reflects common law usage, which treated actions in "reckless disregard" of the law as "willful" violations. *See* W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 34, p 212 (5th ed. 1984) (hereinafter Prosser and Keeton) ("Although efforts have been made to distinguish" the terms "willful," "wanton," and "reckless," "such distinctions have consistently been ignored, and the three terms have been treated as meaning the same thing, or at least as coming out at the same legal exit").

The standard civil usage thus counsels reading the phrase "willfully fails to comply" in § 1681n(a) as reaching reckless FCRA violations and this is so both on the interpretive assumption that Congress knows how we construe statutes and expects us to run true to form, *see Commissioner* v. *Keystone Consol. Industries, Inc.*, 508 U.S. 152, 159, 113 S. Ct. 2006, 124 L. Ed. 2d 71 (1993), and under the general rule that a common law term in a statute comes with a common law meaning, absent anything pointing another way, *Beck* v. *Prupis*, 529 U.S. 494, 500-501, 120 S. Ct. 1608, 146 L. Ed. 2d 561 (2000).

Here Trans Union recklessly and willfully disregarded Plaintiff's first dispute. Even if the Court finds that the Plaintiff failed to properly notify Trans Union before May of 2009, the Court should still find that Trans Union's reliance upon NRA as a reliable source of information was reckless; considering the history between NRA and Trans Union.

### III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully request that this court deny Defendant Trans Union LLC's Motion for Partial Summary Judgment.

Date: March 5, 2010

Respectfully submitted,

*/s/ Brent F. Vullings*
Brent F. Vullings, Esq.
WARREN & VULLINGS, LLP
1603 Rhawn Street
Philadelphia, PA  19111
Ph: 215-745-9800
Fax: 215-745-7880
Attorney for Plaintiff