**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **Christine Robertson** )<br><br>**Plaintiff,** )<br><br>**vs.** )<br><br>**Experian Services Corporation, Trans** )<br>**Union, LLC and National Recovery** )<br>**Agency, Inc.** )<br><br>**Defendants** ) | **Case Number.  1:09-cv-00850** |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANT, EXPERIAN SERVICES CORPORATION'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff, Christine Robertson, ("Plaintiff"), by and through her counsel, Warren

& Vullings, LLP, hereby replies in opposition to the Motion for Partial Summary

Judgment filed by Defendant, Experian Services Corporation ("Experian"), and in

support thereof avers as follows:

**I.     INTRODUCTION**

Plaintiff brought this action against Defendant's, Experian Services Corporation,

Trans Union LLC ("Trans Union"), and National Recovery Agency, Inc. ("NRA"), for

violations of the Fair Credit Reporting Act (hereinafter "FCRA"), 15 U.S.C. §1681 *et*

*sec., as amended,* the Fair Debt Collections Practices Act (hereinafter "FDCPA"), 15

U.S.C. §1692 *et sec.* and various other state laws.

**II.     FACTUAL BACKGROUND**

Plaintiff was sent a collection notice in January 2006 from NCO Financial

Systems, Inc. ("NCO") regarding an alleged debt originally owed to BMG Music Club.

After speaking with an Agent of NCO inquiring about the notice, Plaintiff ascertained

that the alleged account was opened by her son. In March 2006, Plaintiff used her checking account online to pay off the alleged debt. Plaintiff continued to maintain several credit cards in good standing with timely payments during this time.

Several years later, in March 2009, Plaintiff was notified of negative information being reported by Defendant, NRA on her credit report. Plaintiff promptly requested copies of her reports from each of the three major credit reporting bureaus and contacted Defendant, NRA to obtain additional details about the account, which appeared to be the same account Plaintiff had paid nearly three years prior. Plaintiff had several subsequent telephone conversations with agents of Defendant, NRA disputing the validity of the account and requesting validation of the alleged debt which was never sent.

Plaintiff formally disputed the account Defendants, Experian and Trans Union and sent Defendant, NRA a letter of dispute in April 2009. Plaintiff received notification from Defendant, Experian after her initial dispute that the item was verified and would remain on her report. The disputed item was removed by Defendant, Trans Union after Plaintiff filed her claim.

Due to the inaccurate information on her report, Plaintiff's credit card limits were reduced, she incurred penalties for withdrawing funds from her IRA account, her homeowner's insurance rate has increased, and her credit score has dropped nearly 100 points leading to further denials of credit.

## III.   LEGAL STANDARD

Summary judgment is only proper pursuant to Rule of the Federal Rules of Civil Procedure 56(c) if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant

is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c);* Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A factual dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A factual dispute is "material" when it "might affect the outcome of the suit under the governing law." Id. In order to survive summary judgment, a plaintiff must make a showing "sufficient to establish the existence of element[s] essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 323. The moving party has the initial burden of proof and, only once a prima facie case is made, the non-moving party must respond with evidence to contradict and show the existence of a genuine issue of material fact. Whitesides v. Equifax, 125 F. Supp. 2d 813, 816 (U.S.D.C. W.D. La. 2000). In considering a motion for summary judgment, the "facts must be viewed in the light most favorable to the party opposing summary judgment." Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The party opposing the motion, however, cannot "rely merely upon bare assertions, conclusory allegations, or suspicions" to support its claim. Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982).

## IV.   ARGUMENT

Through documents and deposition testimony, Plaintiff has demonstrated that genuine issues of material fact exist as to whether a reasonable jury could find that Defendant, Experian's conduct willfully violated the FCRA, and Experian is not entitled to judgment as a matter of law.  Accordingly, Defendant, Experian's Motion must be denied.

**A.  Plaintiff Has Adduced Sufficient Evidence to Establish Actual Damages Caused by Experian's Inaccurate Reporting**

Plaintiff has introduced evidence that:

1) her consumer report was inaccurate for a period of time because Experian negligently and willfully failed to delete the NRA tradeline; since

2) they verified a debt that did not exist; further,

3) Experian's failure to remove and in fact verified the erroneous information was the cause in fact of the inaccurate consumer report and

4) Plaintiff's credit worthiness was harmed as well as her reputation with her current and prospective creditors.

A case of negligent noncompliance with § 1681e(b) consists of four elements: (1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry. *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir. 1996).

Courts have recognized that where a decision-making process implicates a wide range of considerations, all of which factor into the ultimate decision, it is inappropriate to saddle a plaintiff with the burden of proving that one of those factors was the cause of the decision. *See*, e.g., *Price Waterhouse v. Hopkins*, 490 U.S. 228, 241, 244, 109 S. Ct. 1775, 1785, 1787, 104 L. Ed. 2d 268 (1989) (plurality opinion) (finding that "Title VII [of the Civil Rights Act of 1964] meant to condemn even those decisions based on a mixture of legitimate and illegitimate considerations," and concluding that Title VII plaintiff must show illegitimate consideration "played a motivating part in an

employment decision"); *Village of Arlington Heights v. Metropolitan Housing Development Corp*., 429 U.S. 252, 265-66, 97 S. Ct. 555, 563, 50 L. Ed. 2d 450  (1977) (plaintiff claiming equal protection violation need not "prove that the challenged action rested solely on racially discriminatory purposes" but only that such a purpose was "a motivating factor in the decision").  Indeed, where multiple factors exist, any inquiry into the cause of a decision would be a meaningless endeavor. *See Price Waterhouse*, 490 U.S. at 247, 109 S. Ct. at 1788-89 (plurality opinion).

The Court in *Philbin supra* expanded the *Price* decision by stating "We hasten to add that the burden of proving causation remains with the plaintiff at all times and never shifts to the defendant.  We conclude however that even on this sparse record, a reasonable trier of fact could infer that the inaccurate entries were a substantial factor in bringing about Philbin's injuries. Accordingly, Philbin has produced evidence sufficient to satisfy his burden of proving a prima facie case of negligent noncompliance with 15 U.S.C. § 1681e(b) as to each defendant."  Plaintiff is in the same situation as was Philbin. Experian verified inaccurate information that harmed the Plaintiff.

**B.        Plaintiff's Lost Opportunity Damages Are Recoverable As They Are Not Mere Speculation.**
Plaintiff applied to refinance her mortgage with Quicken Mortgage in April of 2009 to pay-off an existing mortgage that had a rate of 7.5%.  The available rate at the date of application was 4.5% and Plaintiff was not able to qualify for that low due to Experian's inaccurate reporting.  Plaintiff did receive a rate of 5%; ½% higher than the advertised rate. See Plaintiff's deposition at pages 9-12.

Experian relies on Casella v. Equifax Credit Info. Servs., 56 F.3d 469, 475-476 (2d Cir. N.Y. 1995) in which the Court wrote: "Whether or not Casella had the

wherewithal to obtain a mortgage, the District Court properly found that, in the absence

of any evidence that appellant made an offer to purchase property or applied for a home

mortgage, the "lost opportunity" damages he alleged were too speculative. Though

appellant cites cases suggesting that loss of opportunity in the mortgage market or a delay

in obtaining credit resulting in less favorable terms may constitute compensable damages

under the FCRA, see *Bryant v. TRW*, 689 F.2d at 79; Kreger v. United Credit Services,

Inc., 172 Wis. 2d 574, 1992 WL 414653, 495 N.W.2d 526 (Wis. App. 1992) [**17]

(unpublished disposition), we do not find those circumstances present here. Kreger

involved an attempt by plaintiff to refinance a mortgage he already held. See id. at ** 1.

Moreover, there was specific evidence in Kreger that a particular bank might have issued

a new loan, absent plaintiff's negative credit report. See id. at ** 2. In this case, by

contrast, Casella identified no bank that was interested in giving him a home mortgage.

Indeed, as noted above, he presented no evidence that any potential creditor bank even

received his credit report. Under the circumstances, appellant has completely failed to

meet his burden of demonstrating any damages resulting from being deprived of a loan.

See *Ladner v. Equifax Credit Information Services*, 828 F. Supp. 427, 432 (S.D. Miss.

1993) (plaintiff withdrew her application for a loan and never reapplied).

Unlike Casella, Plaintiff did in fact receive a mortgage with less favorable terms.

As such, Plaintiff's damage regarding the mortgage issue are not speculative but in fact

are definitive.

**C.      Plaintiff Can Recovery Damages As A Result of Emotional Distress**

Counsel for Defendant would be unaware of Plaintiff's emotional breakdown

during the Plaintiff's deposition as it was done telephonically.  However, under

questioning by Defense Counsel, Plaintiff testified (page 129):

> **A.      I guess the only thing would be you know, that—yeah, I'm seeing a doctor for something that he told me was caused by stress, the job that I have now, which I had a credit report run two and a half years ago and if it—if I had applied for it now, I couldn't get it. So, yeah this has caused a lot of personal stress.  I couldn't take out a loan for my son's college.**

Counsel for Defendant also asked Plaintiff the following (page 135):

> **Q.      What do you mean by personal damage?**

> **A.      You've taken my credit score, it's down almost 200 points, I can't get a credit card for my son for gas, I'm seeing a doctor for fibromyalgia, I work at the top of my field and I can't get a credit card for the company I work for, what do you think it is?**

*Sarver v. Experian Info. Solutions*, 390 F.3d 969, 971 (7th Cir. Ill. 2004) supports

Plaintiff's claim: "We have maintained a strict standard for a finding of emotional

damage "because they are so easy to manufacture." Aiello v. Providian Fin. Corp., 239

F.3d 876, 880 (7th Cir. 2001). We have required that when "the injured party's own

testimony is the only proof of emotional damages, he must explain the circumstances of

his injury in reasonable detail; he cannot rely on mere conclusory statements." Denius v.

Dunlap, 330 F.3d 919, 929 (7th Cir. 2003)

Plaintiff's deposition testimony clearly states the circumstances or her injury in

reasonable detail.  The action of the Defendants has created health issues, work issues

and personal issues. Experian's attempt to discount the Plaintiff's struggles is contrary to

the evidence in this case.

### D.     Experian's Continual Reporting Of Inaccurate Information Was Willful

Experian verified an inaccurate account on multiple occasions. Experian has been involved in numerous cases with NRA for violations of the FCRA. It was objectively unreasonable for Trans Union to post the NRA item since it had previously been made aware of NRA's posting of inaccurate information as more fully described above.  Courts have held that "willfully" is a "word of many meanings whose construction is often dependent on the context in which it appears," *Bryan* v. *United States*, 524 U.S. 184, 191, 118 S. Ct. 1939, 141 L. Ed. 2d 197 (1998) (internal quotation marks omitted); and where willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well, *see McLaughlin* v. *Richland Shoe Co.*, 486 U.S. 128, 132-133, 108 S. Ct. 1677, 100 L. Ed. 2d 115 (1988) ("willful," as used in a limitation provision for actions under the Fair Labor Standards Act, covers claims of reckless violation); *Trans World Airlines, Inc.* v. *Thurston*, 469 U.S. 111, 125-126, 105 S. Ct. 613, 83 L. Ed. 2d 523 (1985) (same, as to a liquidated damages provision of the Age Discrimination in Employment Act of 1967); cf. *United States* v. *Illinois Central R. Co.*, 303 U.S. 239, 242-243, 58 S. Ct. 533, 82 L. Ed. 773 (1938) ("willfully," as used in a civil penalty provision, includes "'conduct marked by careless disregard whether or not one has the right so to act'" (quoting *United States* v. *Murdock*, 290 U.S. 389, 395, 54 S. Ct. 223, 78 L. Ed. 381, 1934-1 C.B. 144, 1934-1 C.B. 145 (1933))). This construction reflects common law usage, which treated actions in "reckless disregard" of the law as "willful" violations. *See* W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 34, p 212 (5th ed. 1984) (hereinafter Prosser and Keeton) ("Although efforts have been made to

distinguish" the terms "willful," "wanton," and "reckless," "such distinctions have consistently been ignored, and the three terms have been treated as meaning the same thing, or at least as coming out at the same legal exit").

The standard civil usage thus counsels reading the phrase "willfully fails to comply" in § 1681n(a) as reaching reckless FCRA violations and this is so both on the interpretive assumption that Congress knows how we construe statutes and expects us to run true to form, *see Commissioner* v. *Keystone Consol. Industries, Inc.*, 508 U.S. 152, 159, 113 S. Ct. 2006, 124 L. Ed. 2d 71 (1993), and under the general rule that a common law term in a statute comes with a common law meaning, absent anything pointing another way, *Beck* v. *Prupis*, 529 U.S. 494, 500-501, 120 S. Ct. 1608, 146 L. Ed. 2d 561 (2000).

Here Experian verified an item that could not have possibly existed.  Experian not only failed to do a proper reinvestigation, they confirmed a delinquent account that NRA placed that was fabricated and supported by no documentation. Experian recklessly and willfully failed to do a proper reinvestigation.

### **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully request that this court deny Defendant Experian Services Corporation's Motion for Partial Summary Judgment.

Date:  March 3, 2010                              Respectfully submitted,

                                                        */s/  Brent F. Vullings*
                                                        Brent F. Vullings, Esq.
                                                        WARREN & VULLINGS, LLP
                                                        1603 Rhawn Street
                                                        Philadelphia, PA  19111

Ph: 215-745-9800
Fax: 215-745-7880
Attorney for Plaintiff